We'll hear argument first this morning in Case 12-462, NW, Inc. v. Rabbi Ginsberg. Mr. Clement. Mr. Chief Justice, and may it please the Court. Under this Court's decision in Woolens, there are only two relevant questions here, and the Ninth Circuit got both of them wrong. The first question is whether a claim for additional benefits under a frequent flyer program, like flight upgrades, relate to prices, routes, and services. This Court answered that question in the affirmative in Woolens and indeed underscored that the question was not particularly close. The Ninth Circuit's ability to reach the contrary conclusion in the precise same context underscores how far they have strayed from this Court's precedence. The second question is whether the plaintiffs' claim here seek merely to enforce the parties' voluntary undertakings or rather seek to enforce State law to enlarge those undertakings and enlarge the parties' bargain. And as to that question, too, we think Respondent's own claims here make the case quite clear. Respondent did bring a claim here to enforce the parties' voluntary undertakings, a breach of contract claim, and lost on the merits. The implied preemption claim is different. It seeks to impose a duty of fair dealing in reasonableness and superimpose that on the bargain, even where the parties to the contract have essentially given one party absolute discretion. But there's some— Ginsburg— Mr. Clement, the argument was made that if the airline has an unreviewable right to terminate this agreement for any reason or for no reason, if that is so, then it's an illusory contract. What is your answer to that? If one party can get out willy-nilly, why? What kind of bargain is it? Well, there are a couple of answers to that, Justice Ginsburg. The first is, I think although the focus on whether a contract is illusory is sometimes used as part of the analysis under the implied covenant for a bilateral contract, I don't think that same analysis would apply to something like a frequent flyer program, which I think would be properly understood as a unilateral contract where you don't worry about those sort of illusory promises. The second thing is, I think you have to understand in the context— It's a unitary contract. I'm sorry? I'm not sure I understand that point. There is a distinction, if you go back to the Horn books on contract law, between a unilateral contract and a bilateral contract. A unilateral contract is a typical sort of outstanding promise. That promise doesn't require an exchange of consideration, and the party who makes the promise has the ability to withdraw the promise until there's performance essentially relying on the promise. And that's why I think it's actually a little bit of a mistake to apply that doctrine to something like a frequent flyer program. I guess I don't understand that, Mr. Clement, because I always thought that the way these agreements worked were they were agreements that if I flew a certain number of miles on your plane, I was going to get a free ticket. And it wasn't a gift that I was getting a free ticket. It was because I did something. I flew a certain number of miles so that there was an exchange with value on both sides. Well, I suppose you could conceive of it that way. You could also conceive of it as basically being a premium that's offered by the company to reward your loyalty, but you've already gotten full performance. I think you have to conceive of it that way, but that still makes it a unilateral contract. It's not a promise in exchange for another promise. It's a promise in exchange for the performance of an act. That is, flying the airline, you know, a certain number of miles. You're correct. It is a unilateral contract. Now, whether that means that there's no – is there no such thing as an illusory unilateral contract? I don't think there really is. You know, I looked at the treatises for that, and I just don't think that concept really applies in the unitary unilateral contract context. I just don't see why that would make sense, because if I knew that it was really up to you to give me the free ticket, maybe I was going to get it and maybe I wasn't. I don't think that I'd be spending all this time in the air on your plans. You know, I'd find another company that actually gave me the free ticket. And that really, I think, gets to the nub of this, because, of course, what you're suggesting is that there would be a market solution to this problem. And that's what the Airline Deregulation Act is all about, letting the market decide these issues. So if some airline really were crazy enough to systematically turn on its most lucrative and loyal customers, surely the market would solve that. And, of course, if a bunch of airlines did it, the Department of Transportation stands ready to police that. But generally we say when a contract has no consideration, we don't say, oh, we're going to hold you to it anyway because the market will solve it. We say the contract has no consideration. It's illusory in just the way that Justice Ginsburg pointed out. And the question is, if there's really no obligation on the part of the airline here to give that free ticket, if they can do it when they feel like it and not do it when they don't feel like it, why is there any consideration? Why isn't the contract illusory? There is consideration. I'm not sure anything turns on this, but there is consideration, because this is not something where the airline says, look, we can do anything we want. They say, look, if you present us with miles while you're still in good standing in the program, we'll give you upgrades, we'll let you into a lounge. But if, pursuant to the contract, you abuse the program in our sole discretion, then you lose your membership status. And that's what's happened here. Scalia, you're not trying to enforce the contract anyway. You want to get out of the contract. So you want to be happy to have it pronounced an illusory contract, right? What do you care? Well, that is true, but I suppose the argument might be that you could, as a matter of breach of contract law, use this principle to interpret the contract. And if that were an argument, it's an argument that may count one of this complaint. Sotomayor, you're making an assumption. The claim here is not whether he abused or didn't abuse the program. His allegation is that the only reason you terminated the contract was because you wanted to get rid of these high flyers in your merger negotiations with the other airline. That's the same as saying they didn't terminate me because I abused the program. They terminated me because I was of a certain race, or I was woman, or I was handicapped, or some other improper consideration. So are you suggesting that this contract permits you to use that kind of self, that kind of ground, one not grounded in the contract, but grounded in your whim and caprice? Well, a couple of points, Justice Sotomayor. First of all, I think it's really important to emphasize that the claim about pretext and this all being about the merger is actually not something that's made in the breach of contract count or the breach of implied covenant count. That's pled actually in the misrepresentation counts, counts 3 and 4 of the complaint, that everybody recognizes are preempted. Now, what's pled in contract count 1, the breach of contract count, is that under the contract somehow we don't have the ability to terminate somebody without just cause. And that's the argument that the district court rejected on the merits. Now, the implied covenant count, count 2, is different. It says that under State law there is a duty of good faith and fair dealing, and that duty is superimposed on the contract even if the contract gives one of the parties absolute discretion. And those aren't my words. Those are the words of count 2 of the complaint at Joint Appendix page 51. Even if you have absolute discretion, isn't there a limit to that? Isn't there a limit of reasonableness to that absolute discretion? That's the whole question of otherwise you have a contract with no substance. The way I would think about it, Justice Sotomayor, is absolute might not quite mean absolute. And the place to make that argument is under the breach of contract rubric. That you can cite Cardozo and Lady Duff-Gordon. But when you get to saying even if the contract's absolute, State law still superimposes a reasonableness required on the contract, that's the point at which preemption  Now, that's the point at which preemption kicks in.  Scalia. Now, suppose the contract said in its absolute discretion and subject to no obligation of good faith. Suppose it said that. Would State law still impose an obligation of good faith? It might well, Justice Scalia. Well, it might well or it would. It depends on the State. So the majority rules. Well, this State. I mean the State we're talking about. Okay. Minnesota. As I read the cases, the rule in Minnesota is that the covenant of good faith and fair dealing is not waivable. So there's a case that we found called New Amsterdam Casualty. It's in the indemnity context. So I assume that, and it says that in the indemnity context, a covenant of good faith and fair dealing is not waivable. So I don't think you could do that, which I think underscores that this is not the parties agreeing to this. This is having this condition superimposed on them by State law. Kennedy. Is the choice we have here only between State law and no relief? Or is there some theory under which either Federal common law or appeal to the DOT could give the flyer, the customer, some relief? And, you know, we can all think of crazy hypotheticals. Suppose the phone rings and says, I'm John Doe. I want to talk to you about my airline. You've miscalculated. They said, Mr. Doe, we've heard from you 15 times. You're out of this program. It's a mistaken identity. There are two John Does. Can the innocent, good-faith John Doe do anything at all? Yes. The good-faith John Doe can do two things. One, as your question suggested, he can go to the DOT. The DOT has the authority to investigate complaints about frequent flyer programs. It exercises that authority. It's discussed at pages, I think, 20 and 21 of the SG's brief. They heard something like 289 of these complaints last year. So that's one place you can go. The other place you could go in a case of mistaken identity, I mean, if you followed up and if you – certainly if you went so far as to bring a routine breach of contract claim, I assume that would get addressed in that forum, because airlines are not in the interest – do not have an interest in getting rid of their most lucrative and loyal customers mistakenly. Kennedy, in part of that suit, wouldn't you have to – the judge said, what's this underlying substance? And you say, well, there's a duty of good-faith dealing under Minnesota law. And then you're right back where you started. Unless there's some Federal common law or Lincoln Mills or something like that? No, I don't think there's Federal common law. This Court, I think, essentially rejected that in Woollens. I'm making a more practical point, which is in a real case of mistaken identity, I think that would get sorted out in the process, certainly at the point where a breach of contract action was brought. Because, again, if there's a John Doe who really is a frequent flyer. Well, I still don't understand the substantive basis for the breach of contract suit if you say we can't refer to State law. You can refer to State law for the breach of contract. You can't, we would submit, add the implied covenant of breach of good faith, because that enlarges the bargain. Well, Mr. Clement, suppose that this complaint only had one count. And suppose that they had said, look, we have this contract and it gives very substantial discretion. It gives, you know, by the words alone, it gives absolute discretion to Northwest. But that can't really be right, because contracts have this implied covenant of good faith. There's an implied duty to perform in good faith. And that means that this discretion is narrowed in certain kinds of ways, that they can't terminate my membership for certain kinds of reasons. And that's all the complaint said. There was just this one count. Do you think that that would be preempted? Clement, I think the reliance on the implied covenant in that context should be preempted. I think that's the better rule. If this Court wanted to adopt a narrower rule and say, look, it's really at the point that you try to bring a separate implied covenant claim, that's preempted. I suppose as a matter of administrability, you could do that. It might make some sense, because, I mean, you do have to take a practical look at this. In the wake of Woolens, if you plead a routine breach of contract claim, you're going to avoid preemption. The only reason practically you run the risk of preemption by pleading a separate  I guess what I'm suggesting is that the implied covenant here, it's just an interpretive tool. It says that there are certain kinds of provisions that are written very broadly or very vaguely, and an implied covenant comes in to help us interpret those kinds of provisions. And viewed in that way, it's just a contractual device that, in light of Woolens, ought to be permitted. Well, here's my thought on that, which is I think even the Respondents admit that in some States, the implied covenant is much more than simply a rule of construction for the explicit terms of the contract. And I suppose if this Court wants to say that the only way the implied covenant is not preempted is when it's just a rule of construction for the explicit terms of the contract, I suppose we could live with that rule, and I think we'd certainly win in this case. The reason I would suggest that the better rule for this Court to adopt is that the implied covenant should just be preempted even in that circumstance is because in that circumstance, it doesn't add anything. If it really is just a rule of construction for the express terms of the contract, you could get in the same place with the citation to Cardozo and Lady Duff Gordon. Roberts, could you tell me where you think they concede that some States, that their position would lead to a different result in some States? Well, I'm not going to do that. It's in the red brief, and I think it's quite clear. I think they say, I'll try to find the point where I find this rebuttal, but I don't think they do this. They basically say that some States do apply this rule. They say that our claim is different. And I'll get you the exact point. I thought they were saying that in some States it's not an implied term of the contract, but a different sort of provision. Well, I may have misspoke. What I meant is I think both parties agree, as they would have to, that in some States the implied covenant doctrine is used to directly impose public policy. And so in Alaska that seems to be in the case. In Montana that seems to be the case. In some other States it's not. How about Minnesota? In Minnesota, isn't it just a rule of construction of the contract? We don't believe so, Your Honor. I think — I'm not going to try to tell you that Minnesota law is pellucidly clear on this, but Minnesota's — the Minnesota Supreme Court case, the Hennepin case, that adopts the — recognizes the implied covenant, cites the restatement. The restatement quite clearly embraces a view of the implied covenant that goes beyond merely constructing the express terms of the contract. Kennedy, I still have this problem. You say, now don't worry. You can always bring an express contract action. And I say, well, what law do you apply? Well, you have no State law and there's no Federal common law. I don't understand how you can bring an action with no substantive law to inform it. I may have misspoke, Justice Kennedy. The breach of contract claim that you bring, the routine breach of contract claim you bring, is a State law claim. So we don't have any quarrel with count one of this claim, which used Minnesota State contract law to interpret the express terms of the contract, where we have a beef is with count two of the complaint that says even if the contract gives the parties absolute discretion, we are going to superimpose a duty of good faith and fair dealing. And to complete the answer, since Minnesota has adopted the restatement, the restatement suggests that the way you find good faith is you exclude the possibility of bad faith based on community standards of fairness and decency. And at the point that you're applying community standards of fairness and decency, it seems to me quite clear that you are not applying the parties' self-imposed undertakings, but something else. Scalia, I suppose you could say that it is assumed that parties to a contract comport with community standards of fairness and decency. You know, you can wiggle to there if you want. You could try to wiggle there, and my point would be the way to try to wiggle there is interpreting the express terms of the contract. An implied covenant is different, and I think if you take a step back and think about this context, when an airline reserves to itself the sole discretion to make a judgment about frequent flyers or about taking an unruly passenger off a plane, do you really want State courts applying community standards of decency to judge that, or is that something that should be judged by a complaint to the Department of Transportation? If I could reserve the remainder of my time. Thank you, counsel. Mr. Yellen. Thank you, Mr. Chief Justice, and may it please the Court. In Wolins, this Court recognized that Congress enacted the ADA to leave decisions concerning airline prices, routes, and services to the business judgment of air carriers subject to market forces and limited oversight by the Department of Transportation. In light of that statutory purpose, Wolins held that claims based on the State common law of contract are not preempted by the ADA to the extent they seek to enforce the voluntary undertakings of the parties. What if you had a decision by the Minnesota Supreme Court on common law contract principles, and it said, you know, when the parties use the word sole in a contract, we interpret that to mean subject to reasonableness constraint. Parties here use the word sole. Would the application of that principle violate? Would that be preempted or not? In that context, I think not. It depends on what the Court meant by the term reasonable. If the term reasonable incorporates external standards, such as communication standards. Well, reasonable means, I mean, you know, the airline says sole means sole. We don't have to explain why we did it. And the Minnesota court said no. When you say sole, it has to be reasonable. It can't be, for example, for no reason. It has to be for some articulated reason. Yes, I understand, Chief Justice. Thank you. But I think reasonable can have different focuses. It could be reasonable in light of the expectations of the parties at the time that they formed the contract, or it could be reasonable in light of community standards of decency, which are. Well, let's say going forward. Going forward, the parties know that this decision is out there, and they say sole. So it means they're using the term subject to the gloss that's been put on it by the Minnesota Supreme Court. So what about in that case? I think subsequent, if there is a gloss where it would end the — I think that would be a question of what the parties intended with the contract. And I think there may well be an argument under that scenario that the airline understood that the gloss was going to be given, although I. We would assume, then, that the parties knew whenever they used the word sole, they actually meant subject to reasonableness as interpreted by the Minnesota Supreme Court. I think that may well be right, Your Honor. But I want to caution that an argument like that can prove too much. An argument like that could suggest, as Respondent argued in the lower court, that any time a party enters into a contract, the party endorses or at least accepts all normative principles of contract law that would include things like doctrines of unconscionability and other doctrines that impose extra contractual limitations on the party's choices. So you're not going to give me reasonable for anything? No, no. I absolutely am going to give you reasonable. I think it just. Well, if you're going to give me reasonable, in other words, the parties express terms, do not say reasonable. In fact, the most natural reading is that it's not reasonable. But they take the contractual interpretation that the Minnesota Supreme Court has adopted. I don't know why the same rule wouldn't apply when the Minnesota Supreme Court says there is an implied condition of reasonableness across the board and that the implication of the word solved. I think the problem, Chief Justice, is that the notion of the doctrine of the implied covenant is extraordinarily broad and encompasses a number of different concepts. It encompasses notions of reasonableness and implying limitations to discretionary grants of authority reserved in contracts. It also encompasses in some States concepts such as notions of fairness or which extend beyond the intent of the parties. Well, let me change the hypothetical slightly. Suppose the contract says that one of the parties reserves sole discretion to do something, and then the contract goes on to say, and then in exercising this discretion, we don't promise to act in a reasonable manner. But the State court says that nevertheless that has to be interpreted to mean that the party can only perform in a reasonable manner. Then what would the situation be? I think the ADA would preempt exactly that sort of claim or a claim based on that sort of an argument. The crux of the ADA is to leave to the judgment of air carriers subject to market forces decisions concerning rates, routes, or services. And I'd like to underscore this point by pointing out that the interpretation that this Court gives to the ADA is not only going to control frequent flyer programs, it's also going to control things like contracts of carriage. Breyer. That's right. All right. But now, the question I have, which is, I think, for anyone who wants to answer it, particularly the government, I absolutely agree with you that a free market in prices is at the heart of the Deregulation Act, given. I also think frequent flyer programs are simply price discounts, given. I also think that if you don't have contracts, you can't have free markets, given. But I also think that the State cannot, under the guise of contract law, regulate the prices of airlines. If you allow that, you're going to have worse than we ever had. It will be 50 different systems. All right? So if I think those four things, what standard do I use to separate when a State is and when it is not using its contract law to regulate prices? Justice Breyer, I heartily endorse each of the current criteria. Well, good. Then you'll give me the answer, because what I'm missing is what the standard is. And I think the standard that this Court could adopt and make very clear is that any contract doctrine which seeks to interpret the intent of the parties at the time of the contract's formation is a valid standard to be applied in any suit and is not preempted by the ADA. But any contract doctrine, like unconscionability, and like in some States, some instances of the doctrine of the implied covenant, which seeks to impose extra-contractual terms like community standards, like. Ginsburg. You said in some States. So what about the States where that doesn't? No. Are you saying that in some States the implied covenant is assumed to be what the parties agreed upon and some States it's not? Justice Ginsburg, I think there's a continuum. The notion of the implied covenant, as Justice Scalia explained for the D.C. Circuit in the timeshare decision, is a label with many — that encompasses many meanings. Some States, like Illinois and Connecticut, use the doctrine purely, it appears to us, as an interpretive device to discern the intent of the parties. Other States at the other end of the spectrum, Arizona is one. We've cited a number of other cases in our brief. Use the same concept to encompass extra-contractual principles. I don't want to have to sort these out State by State. I mean, it seems to me the regime proposed by the Petitioner is much more manageable. If it goes beyond the words of the contract, and you're reading into it something that it doesn't say, it's a matter of State policy. So I can work with that. But you're asking me to go through each of the 50 States, one by one, to decide, oh, which of these are really trying to discern the intent of the parties and which ones aren't. Especially since you discern the intent of the parties by simply saying, well, parties intend to apply community standards, right? And there will be different community standards in every State, presumably. Some States are more honest than others, right? Kagan. Justice Scalia, I have two responses to that observation. The first is, I don't think the State by State analysis is either unusual or difficult. There has to be a State by State analysis any time you have a contract claim applying State law. There are variances among States in their contract law. The second part of the same response is, I don't think the standard that we're articulating is a particularly different one. There are variances, but not variances in such an ineffable question as to whether this is really an effort to discern the real intent of the parties, or rather whether it's an intent to impose community standards, especially since, as I say, parties intend to adopt community standards usually. With respect, Justice Scalia, I think that's not at all a difficult question. I think a contract – I think it's unlikely that a frequent flyer contract or any airline contract that reserves discretion is likely to have incorporated implicitly community standards. I think the point would be that if a carrier were to decide to incorporate ineffable standards such as that, it would have been pretty clear in any reservation. Kennedy, I'm quoting Minnesota. Kennedy, well, it's easy for you representing the government, but suppose you were representing the airline. Would you come up here and say, the airlines want to be well known that we don't have to be reasonable? I find that very difficult to understand. I have one principal response, Justice Kennedy, which is this. If the Court were to adopt a prophylactic rule along the lines that Petitioner was suggesting, we think that would be better than an alternative prophylactic rule in the other direction, because it would cut off the use of the implied covenant doctrine that would impose extra contractual limitations. It seems pretty inconsistent with the normal presumption against preemption that we apply out of respect for the State legal regimes to say, oh, we're going to adopt a broad prophylactic rule. This is in part precisely why we propose that the Court look, adopt a standard which we don't think would be adequately. Sotomayor, so let's go back to a simpler standard. My simpler standard comes from quoting Hennepin. Does the implied covenant claim extend to actions beyond the scope of the underlying contract, or can it override the expressed terms of an agreement? If the answer is no, it's not preempted. Is that an okay statement? That is an okay statement. So if that's what Minnesota law says, it's okay and it's not preempted. With the following caveat, Justice Sotomayor, in some States that have adopted the implied covenant, they have hybrid approaches where they not only look to the intent of the parties, but also impose external standards. Thank you, counsel. Ms. Rosenbaum. Ms. Rosenbaum. Mr. Chief Justice, and may it please the Court. Northwest claims that the World Perks Contract allowed it to terminate Rabbi Ginsburg's on the Frequent Flyer Program contract, that is, that it allowed it for any reason or on any whim to deprive him of all of the benefits of the Frequent Flyer Program contract bargain. Our position, in contrast, is that Northwest's actions breached its obligations under the contract, specifically the contractual obligation to perform in good faith. Because this is a question of contract interpretation, Rabbi Ginsburg's claim is not true. Sotomayor, what is the lack of good faith that you're claiming? If they thought he was abusive, or are you saying, what are you saying was the bad faith? What action? The action was terminating him from the program and taking away his mile. It can't be that. Without having cause for doing that. What are you saying was the bad cause here? Assume their answer, that he was abusing the program. Well, we do not think that he was abusing the program. And the allegations in the complaint are that. So you're doing exactly what he's saying. You are saying that their judgment of abuse is not enough. We think that there are some reasons that he could not be terminated from the program for, and there are allegations in the complaint that are incorporated into the covenant of good faith claim in the complaint that he was terminated because of the merger between Delta and Northwest. As I understand your argument, and correct me if I'm wrong, he could be terminated without reasonable cause if he happened to be from a state, or if the suit was brought under the governing law of a state, which imposed this obligation of good faith as a matter of law. The State says, regardless of what the contract says, even if it says in its sole discretion, without any obligation of good faith, even if it says that, as a matter of law, there is an obligation of good faith. As I understand your case, you acknowledge that in that State, he would simply be out of luck. I don't think so. Well, that he would be out of luck. He would have no cause of action, because this is obviously not an interpretation of the contract. It is an imposition of a State requirement. We agree that if it's not construing the contract, that if a State were instead claiming that the contract violated the law, instead of that Northwest had violated the contract. So the prospect of, wow, somebody's really been given a raw deal, you know, that's still going to be possible, even if we rule for you here. It depends on what State he's from, right? Well, States tend, in applying the covenant of good faith, to apply it as a contract interpretation tool, as a way of giving effect to the benefits of the contract. Some do, some don't. Some do, some don't. The vast majority of States, and there's an appendix to the State's brief on this issue, talk about the covenant of good faith as a way of interpreting the contract. Let me ask you this. Suppose you have in Minnesota, or one of the States, where you say the covenant is simply a way of effectuating the intent of the parties. You have a contract between two very tough and nasty businessmen, and they write right in their contract, you know, we're going to comply with the literal terms of this contract, but we do not promise each other that we're going to proceed in good faith or that we're going to deal with each other fairly. We're going to take every advantage we can under the literal terms of the contract. Now, would that get rid of the covenant under Minnesota law? Generally, the covenant of good faith cannot be waived. You know, I think the question of whether the principle that the covenant can't be waived is itself an external principle of law is a much harder question than the question here of whether the covenant itself. But, God, if it can't be waived, it sure seems as though it's operating independently of the party's reasonable expectations. But, again, I think you need to separate out the principle that it can't be waived from the underlying principle of what the covenant is doing, which is giving effect to the bargain that the party has entered into based on looking at the reasonable expression the reasonable expectations of the parties. Ginsburg. In Wallens, if this is the case that you rely on, that allowed room for contract claims, the expression was self-imposed undertaking. And the airline says, we didn't impose, we didn't take on this obligation, but the law reads it into every contract whether we want it or not. How is it self-imposed if the party has no say that it's going to apply to the contract? Anyway. Well, the terms of the contract are the self-imposed undertaking. And then this is a tool that's being used to understand and interpret the tools of the terms of the contract, and then to enforce them. And this is a widely used tool to interpret terms of contracts, particularly when there are discretionary terms within a contract. That's something that's done in the vast majority of the States. And, in fact, the discretionary, the cases where there are discretionary terms within a context is the quintessential application of the covenant of good faith. A lot of the early covenant of good faith claims involved outputs or requirements contracts where the specific amount in the contract was not set and the covenant was applied to that sort of situation. And scholars, in talking about the covenant, often specifically note that it applies to discretionary terms. Alito, how do you account for the fact that in many States the covenant of good faith and fair dealing is read into most contracts, but is not read into employment contracts? I think that that's a situation that States struggle with, given the at-will employment doctrine, and they view the covenant and the at-will employment doctrine as being in conflict with each other. Here, though, the covenant and the contract or any other principle are not in conflict with each other. The covenant isn't being used to override any terms in the contract. It's being used to help give meaning to the terms in the contract and to identify what the implicit restrictions are on some of the terms. Well, doesn't that discrepancy show simply that the State has different policies with respect to those two types of contracts? I don't think that it's applying different types of policy. I think it's interpreting the contract and what the contract means differently in different situations. I mean, it might be, right, because people have different expectations in those two different situations, and that the at-will employment is so pervasive and so customary and so sweeping that the policy, the rule of an implied covenant of good faith doesn't apply there because we think everybody expects it not to apply there. Exactly. And I do think that courts will sometimes say the covenant doesn't apply when what they mean is that if the covenant did apply and the court were looking at the reasonable expectations of the parties based on the contract, there would be no reasonable expectation of the rule of implied limits. Well, an at-will employment contract is a contract that gives the employer sole discretion as to whether to retain an employee. And here we have a contract that says that the airline has sole discretion to determine whether to terminate somebody from the frequent flyer program. So what is the difference? Well, it's a difference in the context. And what the term sole discretion means in different contracts is going to vary based on the context and based on what someone entering into that contract reasonably would have expected that contract to mean based on the terms of the contract. So in the employment context, an employee, given the wide acknowledgment of the at-will employment doctrine, might not expect that they could only be terminated for a cause. You would agree, it's the same question I asked the government, I'd like your answer. I imagine that you would agree that a State says the following. We read into, like common law courts used to do all the time, for a transportation company. We believe the price must be fair and reasonable. And a contract in our State for transportation prices has to set a fair and reasonable price, and I personally think many fares are not reasonable. They are too high. All right. And therefore, we have substituted the judges and the States for setting prices instead of the parties. All right. You agree that would be preempted. All right. Now, so what is your standard for distinguishing what is and is not preempted where the State uses its contract law to imply a fair and reasonable term? I think our standard is very similar to the one that the United States said. It's about whether the covenant is going to — whether the claim is looking at whether the parties breached the contract or whether it's looking at whether the contract itself violated the law. So it's a question of whether the claim is actually interpreting the contract and trying to get at what the parties — what their agreement was, or whether the claim is really that the contract, as the parties agreed to it, violated the law. Ginsburg. Suppose the Supreme Court of the State had an opinion that said we're going to be candid about this. The covenant of fair dealing, good faith, it's not in this contract. But we will read it into every contract. That is, if the State's Supreme Court said it's externally imposed, this is a rule that we will read into every contract because of the policy in our State that people should deal with each other fairly. Suppose that was the controlling decision of the Minnesota Supreme Court. Then you're out. Is that right? Yes. If a State says that it's imposing external notions of policy, that would fall on the other side of the line drawn in Rollins, which looked at enforcing terms of the agreement versus imposing external State policies. But that's a little bit weird, isn't it, because in such a State there might be a kind of a contract where the parties reasonably did expect this implicit term that limits something, a very broad conferral of discretion to operate. And yet, just because this State's Supreme Court has framed its argument in a particular kind of way, they don't get the benefit of that. I think it would depend on how the claim was framed and how the Court interpreted that claim and whether in interpreting that claim the Court was looking at the reasonable expectations of the parties based on the terms of the contract and based on their desire to be bound by an enforceable contract, or whether it thought it was imposing or overriding the parties' contract and imposing external notions of fairness. And that's no clearer than the government's view, and it seems to me to be a particular problem when you're talking about the objectives of the ADA to say that the rule varies from State to State, particularly since, of course, we're dealing with airlines that go to a lot of different States. I mean, it seems to me that the loosest State from the point of view of the preemption is going to set the standard. I don't think that the rule itself is varying from State to State. I think that the rule would be the same across States, that when a claim is seeking on the ground. It's a general rule that it depends upon the particular circumstances. That's the same rule, but in its application it certainly varies from State to State. I don't think that it necessarily would, because in all the States, a claim that's met at the expectations and intents of the parties would not be preempted, whereas one imposing external notions of fairness could. Breyer. That isn't what your complaint, but I think paragraph 56, which I think is the key paragraph, says that the under the law is, the contract law that you want to enforce is even where a party to a contract is given absolute discretion, it must exercise that discretion in good faith in a manner consistent with the reasonable expectations of the other party or parties. Now, that's, I think, what they're objecting to, because there it sounds to me like I go into, you know, buy, get a ticket. My reasonable expectation is they're not going to charge me what they're going to charge, you know. I mean, it's unbelievable. But there you see that's my reasonable expectation, and I'm the other party. And so that clause sounds as if you could, under State contract law, govern the price according to my reasonable expectation, namely the consumer. That might be a great idea, but I don't think that's the idea behind this Act. That's what I've just read you. So what do you say about that? Well, I think there's a difference between expectations, subjective expectations and reasonable expectations. And the concept of reasonable expectations in the complaint is an objective standard of what, based on this contract and based on the context, what, how the contract should be interpreted and what implicit terms there are in the contract that need to be interpreted and then enforced, and that can, in fact, be breached by the other party. Scalia, in our decision in this case, do you think we should apply the presumption against preemption of State law? I think you should apply the presumption against the preemption of State law. But the whole purpose of the ADA was to preempt State law. But I can understand applying that presumption to other statutes which say nothing about preemption. The whole purpose of the ADA was to deregulate airlines, was to say there's going to be no Federal regulation, let the free market handle it, and there will be no State regulation. And you want us to apply a presumption against preemption to that statute? I do think the presumption applies. I don't think it's necessary to any outcome in this case, because whether or not it applies in Wollin's, this Court held that claims that are about holding airlines to the terms of their agreement are not preempted, and that's what the Covenant of Good Faith claims about. Ginsburg. But with one thing to read the terms in the agreement, it's another thing to say it's an underlying premise that good faith and fair dealing will control. Are you taking issue with the good faith and fair dealing standard being amorphous, being susceptible to different interpretations by different judges, by different juries? I think there is a fair amount of uniformity across the States in how they actually apply the Covenant of Good Faith, and in terms of applying it as an interpretation of the contract, and then especially in cases where one party is claiming that all of their performance under the contract is in their sole discretion and that they're free not to perform under the contract at all, you know, essentially where the contract would be illusory, in applying the covenant specifically under those circumstances to ensure that there is meaningful performance that's required under the contract. Is an employment at will contract illusory? I don't believe that's an illusory contract. But I think rather than it being important whether there are specific requirements or whether specifically this contract is illusory, I think the fact that one party is claiming that it had no duty to perform under the contract shows that the contract had reasonable implicit limitations in it, that the parties would have reasonably expected that they were contracting to there being some sort of performance under the contract. And, in fact, the principles at issue here are remarkably similar to the principles that were at issue in Wollins itself. And this Court there recognized that those were contract construction issues. Ginsburg-Miller That's because the contract was silent. Here it isn't. Here the contract says sole discretion. In Wollins, the question was retroactivity, and the contract said nothing one way or the other about it. Sherryl In Wollins, the question was an express reservation of rights, and the contract didn't say whether or not it applied retroactively. So the question was whether there were implied limitations on the express reservation of rights. Scalia Would this contract produce a different result if it did not contain the words in its sole discretion? Sherryl The interpretation of the contract might be different, but the expectation of the contract would be different. Scalia You would still apply the very same doctrine of reasonableness, right? So the words in its sole discretion become superfluous. Sherryl I think there may be a larger amount of deference that's given to the airline and that a party would reasonably expect would be given to the airline because of the sole discretion language. And that's obviously a question for the merits. What exactly is the meaning of the sole discretion? Scalia And I guess different States will treat that differently as well, right? Sherryl I think the question is less State by State and really more case by case and context by context of what does sole discretion language mean when used and what are the implied limitations on it. Scalia I find it hard to believe that you're doing nothing but interpreting a contract when you give it the same outcome, whether it says in its sole discretion or it does not say in its sole discretion. I find it hard to grasp how what you're doing in that case is simply interpreting the contract. Sherryl I don't think that there would necessarily be the same outcome in every single situation whether or not the claim – whether or not the contract said sole discretion or not. There may be more deference given to the airline because of the discretionary term. But in both situations, the question would be what does this contract mean, and contracts include both their expressed terms and their implied terms, and the covenant of good faith is going to interpreting those implied terms, to identifying them within the contract and then enforcing them within the contract. If an airline were able to just insert sole discretion or sole judgment within its contract, it would be able to entirely circumvent the rule that this Court set forth in Roland's. Just by adding sole discretion to its contract, it would never be held to any contractual duties or requirements. Alito May I ask you a question about something slightly different? An amicus brief submitted in support of your position by California and some other States points out at some length that there are now a lot of frequent flyer programs in which a lot of miles are earned by making purchases other than for – for flights, and in which miles can also be spent for things other than flights. Do we have to worry about that in this case? We think that that's another reason why this claim is not preempted, is because it has to do with membership in a frequent flyer program rather than being – rather than, like in Wollin's, having to do specifically with access to flights or – Alito Well, what are the facts relating to this particular plan? Can you earn miles by doing things other than flying? Can you spend miles on things other than flying? There are not very many facts in the record about the plan, but the contract does refer to airline miles – sorry, to airline partners from whom one could earn miles and then use miles also. But the plaintiff – The Delta, which is merged into – The plaintiff used the frequent flyer program, whatever else it might be used for. He used it to get lower prices on flights, right? He did, yes. And that is something in the record. But – But why doesn't it – it relates to prices. Even if you get credit for miles from staying at certain hotels, it still has the price for your airline ticket. And likewise, if you can use your frequent flyer miles to get cheaper hotel rooms, that effectively lowers the price of your airline ticket, doesn't it? I mean, it doesn't seem to me to make any difference whether the only thing you get from the frequent flyer mileage is, you know, is airfares or other goodies. They're all price. This is a claim just about his membership in the program overall, and that's a membership where there – people who had the same claim as him could be earning miles on their credit card, spending miles on hotel rooms. And once there's a claim where someone can bring it who has no relationship with air travel whatsoever, where they can bring the exact same claim, it's hard to see how that claim is related to prices, routes, or services of air travel. And there's certainly been no showing here that the person who gets the discount for the hotel room is the person who bought the airline ticket, right? Or the person who used their credit card to receive frequent flyer miles. You said your point is that you can get frequent flyer miles by purchases other than airplane transportation. Yes. And then also use them for purposes other than airline transportation. Reportedly, more miles are earned now on the ground than on flight through means other than travel, than actually through airplane. You don't see anything in the complaint about anything other than airline. No, he himself. Is there anything in your complaint that talks about anything other than airlines? No, there isn't. He, Rabbi Ginsburg himself, earned and used his miles. Well, I know, but I mean, what we're talking about is what count 2 of the complaint says. I think that's their objection. And as far as count 2 of the complaint says, it's about airline miles, I take it, and airline miles are used on airlines, and et cetera. Well, his claim is. Well, if there is something else in this complaint, tell me, and I'll have to figure out whether we go beyond the complaint. His claim is about his membership in the program itself. And the program itself can be used, including the accrued miles that are earned under the program, can be used for purposes besides airline flight. Does it say that in the complaint? It does not specifically say, but the contract does refer to the airline partners. And this was decided. Airline partner, I take it, is another airline. No, I think airline partners can be the people with whom they partner with to whom they sell their miles. And so if I want to find out that in the record, where do I look? This was decided on a motion to dismiss, so all there is is the complaint. But there is the contract. All there is is the complaint, and it doesn't talk about it in the complaint. What I'm thinking about, obviously, is we might reserve that question for another day. The complaint does include the contract that does refer to the partners, but does not, I don't think, define exactly who the partners are. But this Court doesn't have to reach the question of whether or not the claim relates to prices, routes, and services, because it can decide this case based on the line drawn in Woollins of whether or not this claim enforces the terms of the contract, which under Minnesota law, the covenant of good faith does. Cases in Minnesota have referred to this as a breach of contract claim. And I want to respond to Justice Scalia's question. Scalia, what you say would apply to other contractual obligations of the airlines, right? So if the airline says you have to get off the plane, if the flight attendant tells you to do so, there's going to be a good faith obligation attached to that, so you can challenge those decisions in court? There are separate regulations that apply to safety under the ADA, so and separate preemption doctrines that apply to safety under the ADA. But besides that, this would apply to matters besides frequent flyer miles and other sole discretion issues in which the contract leaves an issue to the sole discretion of the airline. I do want to respond to Justice Kennedy's question about whether someone can go to the Department of Transportation. The Department of Transportation does have authority over unfair and deceptive practices by airlines. But this is — that's very different than the claim that we're pursuing here. That's a claim by an airline — sorry, by the government that doesn't give remedies to the specific consumer who was hurt. And that also looks at whether the practice is unfair or deceptive. And our claim here isn't that this was an unfair practice. The claim here is that this is a practice or these were actions that violated the contract, and what's being applied here are contract law principles about interpreting the covenant of good faith. And the same thing was true also in Wolins. At the time of Wolins, the Department of Transportation had the same ability to pursue claims for unfair or deceptive practices, but the Court recognized that that did not override the need for there to be a contract dispute resolution regime by — by the State courts. And that's the same — the same is true here, whether or not the contract term at issue is expressed or implied. And overall, like in Wolins, this is a claim where if these sorts of claims were preempted, it would undercut the efficiency of contracts. And the competitive marketplace that overall the ADA meant to pursue, people need to be able to rely on their contracts. They need to be able to rely on the fact that the other party to their contract will interpret that contract in good faith according to the reasonable expectations of the parties, where they will give them the performance they reasonably thought that they were securing when they entered into the contract. Under Northwest's position here, though, that it has the discretion not to perform at all, people won't be able to rely on the security of their contracts. And it's hard to imagine that when Congress enacted the Airline Deregulation Act, it meant to undercut the efficiency of contracts in that way. Roberts. Roberts. I don't think it helps your argument to say that your position promotes the purposes of the ADA, because the whole point of that, of the preemption provision, is that that's for the Federal government to determine, not for different State laws. What promotes the purposes of the ADA? Well, one thing this Court said in Woollens was that having, being able, for people to be able to trust their contracts was something that promoted the purposes of the ADA. And we think that's true whether the terms that are being relied on are expressed terms of contracts or, like here, the implicit understood terms of the contract that the contract is going to be performed in good faith. Unless the Court has any other questions. Thank you. Roberts. Thank you, counsel. Three minutes, Mr. Clement. Clement. Thank you, Mr. Chief Justice. First, just a couple of loose ends. The concession that I was referring to before is on 15 and 16 of the red brief. I think it was reiterated at the podium. Also, this argument that somehow frequent flyer miles programs have changed or something and are different because there are partners, the same arguments were made by the plaintiffs in Woollens in their brief to this Court that somehow these don't relate to prices and routes and services because you have rental cars and hotels as partners. So I think this Court has already crossed that bridge. Three broader points. I don't want to take up your rebuttal time, but if the facts were that under a particular program, 90 percent of the miles were earned by purchasing things other than flying and 90 percent of the miles were spent on things other than flying, wouldn't that be very different? I'm not sure it would be different in a claim brought against the airlines. I mean, maybe if you want to sue the credit card partner, the ADA has nothing to do with that. But I would say that if you're suing an airline, the Airline Deregulation Act speaks to it. But if the Court wants to reserve that, I suppose it could. I do want to underscore that the implied covenant doctrine is very different from other interpretive tools. It is non-waivable, and I think in a world where you're trying to determine the difference between self-imposed undertakings and things imposed by State law, non-waivability is a huge strike against it being voluntary. It also just is you can bring separate implied covenant claims. You know, no one — I've never heard of a contra preferentum claim, but implied covenant claim is routinely brought as a separate claim. It just shows you really can enlarge the bargain in very real ways. And States make policy decisions about whether to have it. Texas doesn't have implied covenants as a general matter at all. Some States have a valid public policy. They have different views about at-will employment contracts. And when Congress wanted to impose a duty of good faith and fair dealing on the franchise agreements between car manufacturers and automobile dealers, they passed a statute. It's just statutory and policy-oriented in a way that normal rules of construction are not. Now, Justice Breyer, I certainly agree with your four premises. If I had to state a standard, I would say the standard is that the implied covenant is only not preempted when it does no more than provide a rule of construction for the express terms of the contract. But, of course, if that's all it does, then there's nothing to be gained by saying those claims are not preempted, because you can still just get this to the same place by citing Cardozo and Lady Duff-Gordon. And there's a lot to be gained by adopting a more prophylactic rule, because the claims that are brought in the real world are claims that I get a refund, even though the ticket's nonrefundable. I get $1,000, even though the loss limit was 500. I get to sue you for redirecting my packages, even though it was in your sole discretion. So in the real world, the implied covenant claims are elastic and provide a basis for bringing the kind of claims that courts have almost uniformly correctly recognized are preempted. The last question I ask you to think about is, why is it the airlines don't put these covenants in as express covenants? Why do they say sole discretion and not say sole discretion unless it violates reasonable norms of community standards and decency? Well, the reason is, you can't run a national, let alone international, airline if every one of your judgments about taking an unruly passenger off or taking out an abusive customer is going to be second-guessed by a jury applying reasonable standards of ordinary decency and morality. So for that reason, we think the judgment below should be reversed, and we would urge you to apply a more prophylactic rule. Thank you. Roberts. Thank you, counsel. The case is submitted.